IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

**SAHELIAN DEONDRAE McBROOM**  **PLAINTIFF**
**ADC #650775**

v.  No: 3:22-cv-00318-PSH

**MARTY BOYD,** *et al.*  **DEFENDANTS**

## MEMORANDUM AND ORDER

### I. Introduction

Plaintiff Sahelian Deondrae McBroom, an Arkansas Division of Correction inmate, filed a complaint pursuant to 42 U.S.C. § 1983 on December 15, 2022, asserting claims against defendants Sheriff Marty Boyd, Sergeant Stanfield, Corporal Norwood, Corporal Calderone, and Sergeant Jerry Foster (Doc. No. 1-1). He alleged that he had been kept in an unclean cell covered in fecal matter for several days at the Craighead County Detention Center. *Id.* at 7-8. The Court subsequently granted McBroom's application to proceed *in forma pauperis* and directed him to file an amended complaint clarify his claims (Doc. No. 6). In that order, the Court warned McBroom that an amended complaint would render his original complaint without legal effect and that only claims properly set out in his amended complaint would be allowed to proceed. *Id.*

McBroom subsequently filed an amended complaint naming Boyd and Foster as the only defendants (Doc. No. 7). The Court directed service on the defendants named in both complaints, and all defendants answered. *See* Doc. Nos. 8-9. McBroom's claims against Stanfield, Norwood, and Calderone's were subsequently dismissed without prejudice because they were not named in McBroom's amended complaint. *See* Doc. No. 38.

Boyd and Foster (the "Defendants") filed a Motion for Summary Judgment on the merits of McBroom's claims, together with a Brief in Support and Statement of Undisputed Material Facts (Doc. Nos. 42-45). McBroom was notified of his opportunity to file a response and a separate statement of disputed facts (Doc. No. 45). He filed a response and some exhibits (Doc. Nos. 47-48), but did not file a statement setting forth disputed facts he believes must be decided at trial as required by Local Rule 56.1. Because McBroom failed to controvert the facts set forth in the Defendants' statement of facts, Doc. No. 44, those facts are deemed admitted. *See* Local Rule 56.1(c). However, the Court has considered the documents provided by McBroom in determining whether any material factual issues exist. The Court has also considered McBroom's motion to appoint counsel (Doc. No. 46) requesting assistance obtaining witness statements. Having reviewed the summary judgment pleadings, the Court finds that the witness statements sought by McBroom will not assist the Court in ruling on the pending motion. Defendants do not dispute

McBroom's allegations regarding the condition of his jail cell, but move for summary judgment on other grounds. The Court therefore DENIES McBroom's motion for counsel.[1]

The Defendants' statement of facts, and the other pleadings and exhibits in the record, establish that the material facts are not in dispute, and the Defendants are entitled to judgment as a matter of law, as further explained below.

## II. Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, and must instead demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations

---

[1] A civil litigant does not have a constitutional or statutory right to appointed counsel in a civil action, but the Court may appoint counsel at its discretion. 28 U.S.C. § 1915(e)(1). The Court has considered McBroom's need for an attorney, the likelihood that McBroom will benefit from assistance of counsel, the factual complexity of the case, the McBroom's ability to investigate and present his case, and the complexity of the legal issues.

must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted).

An assertion that a fact cannot be disputed or is genuinely disputed must be supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . .". Fed. R. Civ. P. 56(c)(1)(A). A party may also show that a fact is disputed or undisputed by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

In *Reed v. City of St. Charles, Mo.*, 561 F.3d 788 (8th Cir. 2009), the Eighth Circuit Court of Appeals discussed the requirement that facts be viewed in the light most favorable to the nonmoving party when considering a motion for summary judgment. The Court stated, "[i]f 'opposing parties tell two different stories,' the

court must review the record, determine which facts are material and genuinely disputed, and then view those facts in a light most favorable to the non-moving party—as long as those facts are not so 'blatantly contradicted by the record . . . that no reasonable jury could believe' them." *Id.* at 790 (*quoting Scott v. Harris*, 550 U.S. 372, 380 (2007)).

### III. Facts[2]

McBroom's statement of claim in his amended complaint states, in its entirety:

> My complaints of said violations were reported directly to Sgt. Foster, officer in charge, pertaining to my housing cell G-4 was contaminated in human fecal matter.[3] He stated he was not the officer responsible for placing plaintiff in cell G-4, therefore he was not going to move him. According to jail chain of command, Sheriff Boyd, was also notified of these violations and complaints, and he took no actions to correct the wrongdoings of stated defendants in plaintiff's original complaint. In Sheriff Boyd's official capacity he neglected the protocols of safe and humane treatment of confined persons, and did nothing that with his official capacity could correct plaintiff's mistreatment.

Doc. No. 7 at 4. McBroom sued Defendants in both their individual and official capacities. *Id.* at 2.

---

[2] These facts are taken from the Defendants' statement of undisputed material facts (Doc. No. 44), McBroom's deposition testimony (Doc. No. 42-1), and the exhibits filed by McBroom (Doc. No. 47). Documents are transcribed verbatim without any corrections for misspellings or mistakes.

[3] In his deposition testimony, McBroom clarified that he was moved to cell G-4 after he verbally complained about urine in another cell. *Id.* at 16:17-25 – 17:1-12.

On August 17, 2022, McBroom complained about alleged feces on the wall of his cell. Doc. No. 42-1, *Deposition of Sahelian Deondrae McBroom* ("*McBroom Deposition*"), at 15:20-22; Doc. No. 47 at 9 (copy of grievance filed by McBroom submitted on August 17, 2022, complaining of "poo" all over cell 4). McBroom was transferred to the Arkansas Division of Corrections (ADC) around August 22, 2022. *McBroom Deposition* at 15:20-22.

McBroom submitted another grievance concerning cell 4 on August 17, 2022, but it is not marked received until September 9, 2022. Doc. No. 47 at 11. McBroom stated

> Im in gh cell4 and it is covered with poo and this is inhuman and not right I should not be punished like this. I only crossed the line reading the rules and telling the officer that he was wrong to be put in this cell is like this also breaks the jail rules

Foster responded on September 9, 2022, stating "gone." *Id*. McBroom testified that Foster was referring to him having already been moved to the ADC by then. *McBroom Deposition* at 15:3-12.

McBroom submitted yet another grievance on August 17, 2022, regarding the conditions in his cell, stating:

> I'M IN CELL 4 IN GH AND THERE IS POO ALL OVER THE WALLS AND THE WINDOW AND THE FLAP THAT MY FOOD COME IN OFFICERS TOLD FOSTER ABOUT THE SITUATION AND HE WILL NOT MOVE ME TO MALE POD OR HAVE SOMEONE TO COME CLEAN IT UP THIS IS NOT RIGHT OR FAIR TO TELL THE TRUTH IT IS UNHUMAN FOR ME TO HAVE TO LIVE IN A POO SPREADED ROOM AND THE O.I.C KNW

> ABOUT THIS IS THERE ANY WAY I CAN SPEAK TO THE LT. SINCE THE OIC IS NOT SMART ENOUGH TO MAKE THE WRONG RIGHT. I ONLY CROSSED THE YELLOW LINE TO READ THE RULES.

Doc. No. 47 at 13. His grievance was answered by Corporal K. White the next day, and McBroom appealed. *Id.* His appeal was also answered by White, noting that McBroom had been released.

McBroom grieved about the conditions in his cell again on August 24, 2022. Doc. No. 47 at 15. Foster replied on September 9, 2022, noting that McBroom was no longer there. *Id.*

In his deposition, McBroom testified that he no interactions with Boyd concerning the conditions in his cell but sued Boyd solely because he had general responsibility for the jail as sheriff. *McBroom Deposition* at 7:12-20, 11:10-20. McBroom also acknowledged that he never spoke to Foster about the conditions in cell, but maintained that he believed other officers reported the conditions to Foster. *Id.* at 10:20-25 – 11:1-8. Specifically, McBroom testified:

> Q: What did Foster do wrong?
>
> A: When it was brought to his attention that I was in that cell covered in human feces, he did nothing.
>
> Q: Who brought it to his attention?
>
> A: Carter. Ofc. Carter.
>
> Q: Were you there for that conversation?

> A: Was I there for the conversation?
>
> Q: Were you there -- did you witness the conversation between Ofc. Carter and Sgt. Foster?
>
> A: No. No, I -- no, I didn't.
>
> Q: So you were not privy to that conversation?
>
> A: No, sir.
>
> Q: Okay. So are you assuming that conversation happened?
>
> A: Yes, sir. Yes, sir, I am.

*Id. See also id.* at 21:3-10 (acknowledging he never spoke directly to Foster but spoke with the officers that worked under him); *id.* at 11:21-25 – 12: 1-2 (stating that he submitted a grievance about feces in his jail). McBroom testified that he told officers Stanfield, Calderone, and Norwood about the feces in his cell. *Id.* at 14:5-17.

McBroom also acknowledged in his response to the Defendants' motion for summary judgment that he never spoke with either Defendant "face-to-face" about the conditions in his cell. Doc. No. 48 at 2. He further alleged that the Defendants failed to enforce jail policy and procedures. *Id.*

## IV. Analysis

### A. *Individual Capacity Claims*

The Defendants argue that they are entitled to qualified immunity with respect to McBroom's individual capacity claims because he cannot prove they violated his

constitutional rights.[4] The Court agrees for the reasons described below.

To prevail on an Eighth Amendment conditions of confinement claim, a prisoner must show (1) the alleged deprivation was, "objectively, sufficiently serious," and resulted "in the denial of the minimal civilized measure of life's necessities," and (2) prison officials were deliberately indifferent to "an excessive risk to inmate health or safety." *Farmer v. Brennan,* 511 U.S. 825, 834 (1970). A defendant may not be held liable under § 1983 unless he was personally involved in or had direct responsibility for the constitutional violation. *See Mayorga v. Missouri,* 442 F.3d 1128, 1132 (8th Cir. 2006) ("Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights.") (internal quotations and citations omitted).

In *Taylor v. Riojas*, 592 U.S. 7, 8 (2020), the United States Supreme Court agreed that holding a prisoner in a cell "teeming with human waste" for six days violated the Eighth Amendment, and that any reasonable officer should have realized

---

[4] Qualified immunity protects government officials from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person [in their positions] would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). To determine whether a defendant is entitled to qualified immunity, the Court must consider two questions: (1) do the facts alleged by plaintiff establish a violation of a constitutional or statutory right; and (2) if so, was that right clearly established at the time of the defendant's alleged misconduct. *Wright v. United States*, 813 F.3d 689, 695 (8th Cir. 2015). Courts may exercise "their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

that, precluding their defense of qualified immunity. The Supreme Court further noted that the district court would have to conduct an officer-by-officer analysis on remand to determine which officers were aware of, but deliberately indifferent to, those conditions. *Id.* at 9 ("[A]lthough an officer-by-officer analysis will be necessary on remand, the record suggests that at least some officers involved in [the plaintiff-prisoner's] ordeal were deliberately indifferent to the conditions of his cells.").

In this case, Defendants do not present any evidence to dispute McBroom's alleged cell conditions. Rather, they argue they were not sufficiently involved in the violations alleged by McBroom and that McBroom suffered no physical injuries. Doc. No. 43 at 5-7. The Court need not reach Defendants' arguments regarding physical injury because McBroom has acknowledged the Defendants were not directly involved or necessarily made aware of the conditions in his cell. Specifically, McBroom testified that he never spoke directly to Boyd or Foster about the conditions in cell, but believed they became aware of those conditions through other officers or the grievances he filed. *McBroom Deposition* at 10:17-25 – 12:1-2. He also clarified that it was officers Stanfield, Calderone, and Norwood that he told about the feces in his cell. *Id.* at 14:5-17. McBroom also did not claim that he told either Boyd or Foster about the conditions in his cell in the grievances he submitted; he never mentioned Boyd by name or title, and in one grievance, he

merely claimed that officers had made Foster aware of the conditions. *See* Doc. No. 47 at 9-15. The grievance responses indicate that Foster eventually reviewed two of these grievances, but only after McBroom had been moved to the ADC. *Id.* at 15.

Because McBroom admits neither Boyd nor Foster were directly informed of the unclean conditions in his cell, and there is no proof they were aware of them but deliberately indifferent to such conditions, they cannot be held liable for those violations. Additionally, to the extent McBroom seeks to hold Boyd and Foster accountable due to their supervisory positions as sheriff and officer in charge of a shift, his claims fail as a matter of law because *respondeat superior* is not a recognized basis for § 1983 liability. *See Keeper v. King*, 130 F.3d 1309 (8th Cir. 1997).

### B. *Official Capacity Claims*

McBroom also sues the Defendants in their official capacities. Official capacity claims are "functionally equivalent to a suit against the employing governmental entity." *Veach v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). Thus, a suit against a defendant in his official capacity is in essence a suit against the County or city itself. *See Murray v. Lene*, 595 F.3d 868 (8th Cir. 2010); *Liebe v. Norton*, 157 F.3d 574 (8th Cir. 1998). A municipality cannot be held liable on the basis of *respondeat superior*, or simply by virtue of being the employer of a tortfeasor. *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201 (8th Cir.

2013). Accordingly, the Defendants, as county employees, can only be held liable in their official capacities in this case if McBroom can establish that a constitutional violation was committed pursuant to "an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009). To establish municipal liability through an unofficial custom, a plaintiff must demonstrate

> (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom, *i.e.*, that the custom was a moving force behind the constitutional violation.

*Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1160 (8th Cir. 2014).

McBroom has not alleged that the conditions he described were caused by an unconstitutional policy or custom of Craighead County. In fact, he alleges the Defendants acted in violation of county policies mandating humane and hygienic conditions. *See* Doc. No. 47 at 16-29. The Defendants are therefore entitled to judgment as a matter of law in their official capacities.

## V. Conclusion

The Defendants' motion for summary judgment (Doc. No. 42) is granted. Judgment is awarded in favor of Defendants, and McBroom's claims are dismissed with prejudice.

IT IS SO ORDERED this 3rd day of March, 2025.

_____
UNITED STATES MAGISTRATE JUDGE